IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES SAYAH**, on behalf of himself and all others similarly situated, | : CIVIL ACTION NO. 1:24-CV-1199 :<br>: **(Judge Conner)** : |
| **Plaintiff** | : : |
| **CAPSTONE LOGISTICS, LLC,** | : : |
| **Defendant** | : : |

**MEMORANDUM**

Plaintiff James Sayah advances state-law claims for underpayment of overtime wages against his former employer, Capstone Logistics, LLC. Capstone moves to compel arbitration and to dismiss Sayah's complaint pursuant to an agreement between the parties. We will grant the motion in part and deny it in part.

**I.      Factual Background & Procedural History**

Sayah is a Pennsylvania resident and former Capstone employee. (Doc. 1 ¶¶ 5, 10). Capstone is a Delaware company with its principal place of business in Georgia that provides, among other services, third-party warehouse management. (See id. ¶¶ 2, 6). Sayah worked for Capstone as a laborer at a warehouse in Carlisle, Pennsylvania; his main duties included breaking down pallets and moving goods throughout the warehouse. (See id. ¶¶ 10-11).

According to documents provided by Capstone,[1] the company utilizes a web-based program called Lifion to track when new Capstone employees review and sign contracts, company policies, and other documents. (See Doc. 13-1, Ex. A ¶¶ 6-13). Lifion records reflect that Sayah assented to Capstone's arbitration agreement on December 21, 2022. (See id., Ex. A ¶ 13 (citing Ex. 3)). That agreement provides:

> Agreement to Arbitrate. Both I and the Company agree to use binding arbitration, instead of going to court, as the sole and exclusive means to resolve any "Covered Claims" that arise or have arisen between me and the Company. I understand and agree that arbitration is the only forum for resolving Covered Claims and that both I and the Company are waiving and relinquishing our respective rights to trial before a judge or jury in federal or state court in favor of arbitration. **I understand that my continued employment with the Company is deemed to be acceptance of this Agreement to Arbitrate.**

(See id., Ex. 6 ¶ 2).

Another provision purports to be a class action waiver:

> Waiver of Class and Collective Claims. I and the Company agree that Covered Claims will be arbitrated only on an individual basis. All claims subject to this Agreement shall be brought in the individual capacity of myself or the Company . . . . I and the Company agree to waive any substantive or procedural rights that we may have to participate in, bring, or receive monetary or other relief from any action on a class or collective basis against each other.

(See id., Ex. 6 ¶ 5). And the contract purports to be severable:

---

[1] We may consider these materials at this procedural juncture because the complaint relies on them and neither party disputes their authenticity. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

2

> [i]f any term, provision or portion of this Agreement is determined to be void or unenforceable, it shall be severed and the remainder of this Agreement shall be fully enforceable; provided, however, that if the waiver of class and collective claims is found to be unenforceable, then any claim brought on a class, collective or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for such claims.

(See id., Ex. 6 ¶ 12). Lastly, the contract states it "is made pursuant to and shall be governed under the Federal Arbitration Act." (See id., Ex. 6 ¶ 14).

Capstone terminated Sayah on February 5, 2024. (See Doc. 1 ¶ 12; see also Doc. 13-1, Ex. A ¶ 4 (citing Ex. 1)). Sayah initiated this action on July 18, 2024. He advances one claim on behalf of himself and a putative class, which he defines as "all warehouse workers for [Capstone] in the Commonwealth of Pennsylvania whose overtime pay was calculated using the Production Pay Model" in the three years preceding the filing of the lawsuit. (See Doc. 1 ¶ 34). He alleges Capstone underpaid overtime wages in violation of the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. and Cons. Stat. Ann. § 333.101 *et seq.* (See Doc. 1 ¶¶ 50-64).[2] Capstone now moves to compel arbitration and to dismiss Sayah's claims. The motion is fully briefed and ripe for resolution.[3]

---

[2] Sayah proceeds on the legal theory that Capstone underpaid warehouse workers by using a fluctuating workweek method—which is purportedly prohibited under PMWA's enabling regulations—to calculate overtime pay. (See id. ¶¶ 50-64).

[3] Sayah requested leave to file a sur-reply in a footnote to his brief in opposition. (See Doc. 15 at 6 n.2). We will deny this request because it was not made in a formal motion. A sur-reply is unnecessary in any event: Capstone did not raise any new arguments in its reply. See *infra* n.5.

## II.   Legal Standards

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, requires district courts to refer for arbitration any issue covered by an enforceable arbitration agreement and to dismiss a case when one of the parties seeks a stay pending arbitration. See Lloyd v. Hovensa, LLC, 369 F.3d 263, 269 (3d Cir. 2004) (citing 9 U.S.C. § 3). A court may rely upon either the standards governing motions to dismiss under Rule 12(b)(6) or those governing summary judgment motions under Rule 56 when resolving a motion to compel arbitration. See Guidotti v. Legal Helpers Debt Resol. LLC, 716 F.3d 764, 771-76 (3d Cir. 2013); see also GGNSC Camp Hill W. Shore, LP v. Thompson *ex rel.* Mullen, No. 1:15-CV-445, 2015 WL 1932330, at *7 (M.D. Pa. Apr. 28, 2015) (Conner, C.J.). In Guidotti, our court of appeals offered guidance for determining the appropriate standard given the varying circumstances and procedural postures in which such cases arise:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question.

Guidotti, 716 F.3d at 776 (internal citations and quotation marks omitted) (quoting Somerset Consulting, LLC v. United Cap. Lenders, LLC, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). We will decide Capstone's motion under the Rule 12(b)(6) standard

4

because the question of arbitrability can be resolved on the face of the complaint and undisputed documents relied upon therein.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer, 605 F.3d at 230 (citing Pension Benefit Guar. Corp., 998 F.2d at 1196).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal

5

conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III. Discussion

Capstone argues the arbitration agreement is enforceable under the FAA, (see Doc. 14 at 9-18), or in the alternative under Pennsylvania law, (see id. at 18-19; see also Doc. 34 at 2-8). Sayah rejoins that he is exempt from the FAA under Section 1's transportation worker exception, (see Doc. 15 at 6-10), and that the court cannot enforce the agreement under state law, (see id. at 12-14).

Section 1 of the FAA exempts arbitration agreements in "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." Singh v. Uber Techs., Inc., 67 F.4th 550, 553 (3d Cir. 2023) (quoting 9 U.S.C. § 1; citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 109 (2001)). In Harper v. Amazon.com Services, Inc., 12 F.4th 287 (3d Cir. 2021), our court of appeals announced a three-step test to determine whether Section 1's transportation worker exception exempts a particular contract from the FAA. See Harper, 12 F.4th at 296. At step one, the court uses traditional tools of statutory interpretation to determine whether the complaint's *allegata* state a plausible claim that the agreement covers a class of exempt workers. See id. (quotation omitted).

6

"If that analysis leads to murky answers," the court proceeds to step two and assesses "whether the contract still requires arbitration under any applicable state law." See id.  If it does, the court must enforce the agreement under state law; if it does not, the court "return[s] to federal law" and may order discovery to determine conclusively whether Section 1 applies.  See id.  We proceed stepwise.

      **A.     The Transportation Worker Exception Plausibly Applies.**

The FAA "requires courts to 'rigorously enforce arbitration agreements according to their terms.'"  Singh, 67 F.4th at 553 (quoting Am. Express Co. v. It. Colors Rest., 570 U.S. 228, 233 (2013)).  But the FAA is not limitless.  See id.  The exception for transportation workers contained in Section 1 of the FAA typifies these limits.  As noted, the act exempts arbitration agreements in employment contracts "of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  See id. (citing 9 U.S.C. § 1; Circuit City, 532 U.S. at 109).  Two principles guide our interpretation of the exception's catch-all, also known as the "residual clause."  See id. at 553-54.  First, it must be construed narrowly due to the FAA's pro-arbitration structure and purpose.  See id. at 554 (quoting Circuit City, 532 U.S. at 118).  Second, its scope "is 'controlled and defined by reference to the enumerated categories' of seamen and railroad workers designated in the statute" under the *ejusdem generis* cannon.  See id. (quoting Circuit City, 532 U.S. at 115).  With these guideposts in mind and taking the complaint's *allegata* as true, we conclude that Sayah plausibly belongs to a class of workers exempt from the FAA under the residual clause.

7

The residual clause was the subject of two recent Supreme Court opinions. In <u>Southwest Airlines Co. v. Saxon</u>, 596 U.S. 450 (2022), the Court held that airline cargo loaders, who performed their duties intrastate but loaded baggage onto airplanes destined for other states or foreign nations, are covered by the residual clause. <u>See</u> <u>Saxon</u>, 596 U.S. at 455. The Court reached that conclusion after applying a two-step framework: first, determine the relevant "class of workers"; next, determine whether that class is "engaged in interstate commerce." <u>See</u> <u>id.</u> A class of workers must "play a direct and 'necessary role in the free flow of goods' across borders" to avoid the FAA by virtue of Section 1's residual clause. <u>See</u> <u>id.</u> at 458 (quoting <u>Circuit City</u>, 532 U.S. at 121).

In <u>Bissonnette v. LePage Bakeries Park St., LLC</u>, 601 U.S. 246 (2024), the Court addressed "whether a transportation worker must work for a company in the transportation industry to be exempt under [Section] 1 of the FAA." <u>See</u> <u>Bissonnette</u>, 601 U.S. at 252. Answering no, the Court clarified that <u>Saxon</u>'s analytical framework focuses on "'the *performance* of work' rather than the industry of the employer." <u>See</u> <u>id.</u> at 253 (quoting <u>Saxon</u>, 596 U.S. at 456) (emphasis in original); <u>see also</u> <u>Singh</u>, 67 F.4th at 556 (emphasizing that the inquiry focuses on the actual work performed by a particular class of workers).

Our court of appeals has not squarely addressed whether the class of workers at issue here—warehouse laborers who move goods throughout a warehouse as a facet of the interstate shipping process—fall within Section 1's residual clause in light of <u>Saxon</u> and <u>Bissonnette</u>. However, it has decided that rideshare drivers do not, <u>see</u> <u>Singh</u>, 67 F.4th at 553, and it has noted in dicta that last-mile Amazon

8

delivery drivers likely do, see Harper, 12 F.4th at 293 n.4 (citations omitted). The court's reasoning in those decisions militates in favor of interpreting the residual clause to include Sayah's proposed class. Additional persuasive authority bolsters our conclusion. For example, the only circuit to address the issue has determined that warehouse workers who process and sort goods during interstate transit are exempt from the FAA. See Ortiz v. Randstad Inhouse Servs., LLC, 95 F.4th 1152, 1162 (9th Cir. 2024). And the First Circuit noted the same, albeit in dicta. See Waithaka v. Amazon.com, Inc., 966 F.3d 10, 20 n.9 (1st Cir. 2020).[4] Those decisions offer up "murky answers" regarding the applicability of the transportation worker exception to the arbitration agreement here. See Harper, 12 F.4th at 296. We thus proceed to assess enforceability under state law. See id.

### B. The Arbitration Agreement Is Enforceable Under State Law.

Capstone urges us to enforce the arbitration agreement under state law, even in the absence of an explicit contingency clause. (See Doc. 14 at 18-20; see also Doc. 34 at 2-8). Sayah responds that the contract is governed exclusively by the FAA and that we lack the authority to "substitute" any state law. (Doc. 15 at 12-14).

#### i. *Preemption*

Article VI, clause 2 of the United States Constitution makes federal law "the supreme Law of the Land." U.S. CONST. art. VI, cl. 2. That principle creates the legal doctrine of preemption, of which there are three types: express, field, and conflict. Our court of appeals addressed the preemptive effect of the FAA in Palcko

---

[4] Though we recognize that these authorities are not binding, we are nevertheless persuaded by those courts' *ratio decidendi*.

v. Airborne Express, Inc., 372 F.3d 588 (3d Cir. 2004).  There, the district court concluded that the FAA's transportation worker exception applied and preempted state-law enforcement of an arbitration agreement.  Palcko, 372 F.3d at 591.  The court of appeals reversed, holding that the contract could be enforced under state arbitration statutes, regardless of whether the transportation worker exception applied.  See id. at 596.  The panel first noted that, even though the FAA lacks an express preemptive provision and does not "'occupy the entire field of arbitration,'" it displaces state law "'to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  See id. at 595-96 (quoting Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 477-78 (1989)).

"Congress," the court continued, "enacted the FAA 'to ensure judicial enforcement of privately made agreements to arbitrate,' rather than restrict the force of arbitration agreements."  See id. at 595 (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985)).  The panel then explained that enforcement of an arbitration agreement under state law furthers the FAA's pro-arbitration structure and aims, and remanded the matter back to the district court.  See id. at 596.  Two decades after Palcko, our court of appeals reiterated that "[a] state law enforcing arbitration . . . creates no conflict" with the FAA even when the transportation worker exception applies.  See Harper, 12 F.4th at 294-95 (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46 (2006); Volt Info., 489 U.S. at 474).

We conclude that the transportation worker exception to the FAA does not preclude enforcement of the instant arbitration agreement under otherwise

10

applicable state law.  The agreement Sayah assented to is best read as a contract to arbitrate all covered claims and a separate, severable, choice-of-law clause selecting the FAA.  (See Doc. 13-1, Ex. 6 ¶¶ 2-3 (contract to arbitrate covered claims), ¶ 12 (severability), ¶ 14 (choice of law)); see also Harper, 12 F.4th at 295 & n.6 (noting that same reading of a similar contract was plausible); Harper v. Amazon.com Servs., Inc., No. 19-CV-21735, 2022 WL 17751465, at *8 (D.N.J. Dec. 19, 2022) (adopting this reading of similar employment contract on remand, even though arbitration agreement expressly displaced state law in favor of FAA) (citing Waithaka, 966 F.3d at 13), clarified in 2024 WL 3833522 (D.N.J. Aug. 15, 2024), appeal dismissed, No. 23-1073 (3d Cir. Sept. 3, 2024).  In that view, the parties must have contemplated the application of *some* state law in the absence of FAA enforcement.  See Harper, 12 F.4th at 295; see also Easterday v. USPack Logistics LLC, No. 15-CV-7559, 2022 WL 855583, at *2 (D.N.J. Mar. 23, 2022) (citation omitted) (recognizing that state law would automatically govern agreement to arbitrate when FAA exception applies, even if contract did not mention state law), appeal dismissed, No. 22-1749, 2024 WL 1731541, at *1 (3d Cir. Feb. 27, 2024); Kauffman v. U-Haul Int'l, Inc., No. 5:16-CV-4580, 2018 WL 4094959, at *5-6 (E.D. Pa. Aug. 27, 2018) (citation omitted).  We find that the contract is enforceable under state law.

Moreover, we are unpersuaded by Sayah's arguments that the lack of a clear state-law contingency clause should change our view.  (See Doc. 15 at 12-14).  Palcko and Harper focused on the structure and policy of the FAA; the state-law contingency clause in Palcko was not integral to the court's analysis.  See Palcko, 372 F.3d at 596.  The presence or absence of a clear contingency clause does not

11

change the fact that Congress passed the FAA with an eye towards the "rigorous enforcement" of arbitration agreements. See Singh, 67 F.4th at 553 (quotation omitted). When parties purport to choose the FAA but that statute is inapplicable due to an exception or otherwise, "*some* law must" govern "if federal law does not." See Harper, 12 F.4th at 294 (holding that district court must perform choice-of-law analysis when parties' choice of FAA is plausibly ineffective by operation of transportation worker exception) (emphasis in original); see also id. at 295 (citing Collins v. Mary Kay, Inc., 874 F.3d 176, 183 (3d Cir. 2017); Palcko, 372 F.3d at 595). The lack of a state-law contingency clause in Sayah's arbitration agreement does not alter our conclusion that the agreement is enforceable under state law. The only remaining question is which State's law applies.

      ii.    *Choice of Law*

Federal courts sitting in diversity jurisdiction apply the choice-of-law rules of the State in which they sit; here, Pennsylvania. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); see also Harper, 12 F.4th at 295 (citations omitted). In Griffith v. United Air Lines, Inc., 203 A.2d 796 (Pa. 1964), the Pennsylvania Supreme Court formally abandoned the traditional *lex loci delicti* choice-of-law approach to torts cases "in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." Griffith, 203 A.2d at 805. Our court of appeals subsequently predicted that "the Pennsylvania Supreme Court would apply Griffith to contract disputes." See Hammersmith v. TIG Ins. Co., 480 F.3d 220, 227-28 & n.4 (3d Cir. 2007) (citing Melville v. Am. Home Assurance Co., 584 F.2d 1306, 1313 (3d Cir. 1978)).

Relevant considerations in contract disputes include (1) the place of contracting, of negotiation, and of performance; (2) the location of the contract's subject matter; and (3) the parties' domicile, residence, nationality, and place of incorporation or business. Ario v. Underwriting Members of Lloyd's of London Syndicates 33, 205 and 506, 996 A.2d 588, 595 (Pa. Commw. Ct. 2010) (Leadbetter, P.J.) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2)). Each factor favors applying Pennsylvania law in this case except that Capstone is a Delaware entity with its principal place of business in Georgia. (See Doc. 1 ¶¶ 5-6). Fortunately, Capstone advocates for the application of Pennsylvania law, so those factors hold less weight. (See Doc. 14 at 18-19).[5] The totality of the circumstances

---

[5] On October 4, 2024, Sayah filed a motion to strike portions of Capstone's reply that advocate for enforcement of the arbitration agreement under Pennsylvania law. (See Doc. 35). He posits that because Capstone raised the choice-of-law issues for the first time in its reply, he was deprived of an opportunity to address them. (See id. at 1-3). Capstone opposes the motion, (see Doc. 36), and has filed a motion to strike Sayah's motion to strike, (see Doc. 37), for failing to file a supporting brief.

We begin with Sayah's motion. Courts generally consider arguments raised for the first time in a reply brief waived because fairness requires an opportunity for the nonmoving party to respond. See, e.g., TriState HVAC Equip., LLP v. Big Belly Solar, Inc., 752 F. Supp. 2d 517, 529 n.8 (E.D. Pa. 2010). As Sayah points out, however, Capstone argued for the application of Pennsylvania law in its opening brief. (See Doc. 35 at 2 ¶ 3 (quoting Doc. 14 at 18-19)). In fact, Sayah wrote in his opposition brief that "Capstone also argues that arbitration should be compelled under the Pennsylvania Revised Uniform Arbitration Act." (See Doc. 15 at 12). He then chose to argue that the substitution of any state law was illegal, rather than address which state law should govern the contract in the event the FAA did not apply. (See id. at 12-14). Tellingly, Sayah does not argue for the application of any other state's law—or even that any other plausibly applicable state laws materially conflict with the PA RUAA—in his motion to strike. (See generally Doc. 35). Sayah had notice of the choice of law issues when he filed his opposition to the motion to compel arbitration. Thus, we will deny Sayah's motion. We will also deny as moot Capstone's motion to strike Sayah's motion, (see Doc. 37), having denied the latter.

13

persuade us that Pennsylvania law governs Capstone's arbitration agreement with Sayah.

Pennsylvania's Revised Uniform Arbitration Act ("PA RUAA"), 42 PA. CONS. STAT. § 7301 *et seq.*, provides that "a provision in a written agreement to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity relating to the validity, enforceability or revocation of any contract." 42 PA. CONS. STAT. § 7303. Sayah has not argued the arbitration agreement is invalid or unenforceable, or that his claims are not covered by it. (See generally Doc. 15).[6] The agreement to arbitrate is, therefore, enforceable under the PA RUAA. Lastly, although Capstone requests that we dismiss this case, (see Doc. 14 at 2), the PA RUAA requires us to stay this action pending arbitration. See 42 PA. CONS. STAT. § 7304(d).

---

[6] Sayah argues that the class action waiver only applies to arbitration proceedings and is thus unenforceable in court on its own terms. (See Doc. 15 at 10-12). Having already concluded that the contract is subject to arbitration under Pennsylvania law, we need not address this argument.

## IV. Conclusion

We will grant Capstone's motion to compel arbitration in part and deny it in part. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    October 30, 2024